CLOSED

# U.S. District Court
# District of Rhode Island (Providence)
# CRIMINAL DOCKET FOR CASE #: 1:19−mj−00074−LDA All Defendants

Case title: USA v. Hlady

Date Filed: 09/18/2019
Date Terminated: 09/18/2019

Assigned to: Magistrate Judge Lincoln D. Almond

**Defendant (1)**

**Michael Hlady**                                    represented by    **Kevin J. Fitzgerald**
*TERMINATED: 09/18/2019*                                              Federal Defender's Office
*also known as*                                                       10 Weybosset St.
Michael Peters                                                        Suite 300
*TERMINATED: 09/18/2019*                                              Providence, RI 02903
                                                                      401−528−4281 (ex. 15)
                                                                      Fax: 528−4285
                                                                      Email: Kevin_Fitzgerald@fd.org
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*
                                                                      *Designation: Public Defender or*
                                                                      *Community Defender Appointment*

**Pending Counts**                                   **Disposition**

None

**Highest Offense Level (Opening)**

None

**Terminated Counts**                                **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                       **Disposition**

None

**Plaintiff**

**USA**                                              represented by

1

**Sandra R. Hebert**
U.S. Attorney's Office
50 Kennedy Plaza
8th Floor
Providence, RI 02903
401−709−5053
Fax: 709−5001
Email: sandra.hebert@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 09/18/2019 | 1 | 3 | Rule 5(c)(3) Documents Received from Eastern District of New York (Brooklyn) as to Michael Hlady (Noel, Jeannine) (Entered: 09/18/2019) |
| 09/18/2019 | | | Arrest of Michael Hlady in Rhode Island. (Noel, Jeannine) (Entered: 09/18/2019) |
| 09/18/2019 | | | Minute Entry for proceedings held before Magistrate Judge Lincoln D. Almond:Initial Appearance in Rule 5(c)(3) Proceedings as to Michael Hlady held on 9/18/2019, Bond Hearing as to Michael Hlady held on 9/18/2019, Rule 5 Hearing held: Defendant advised of rights as to Michael Hlady held on 9/18/2019 (Hebert, Fitzgerald) PTS Finneran; Court informs deft of rights & charge; Deft understands rights & charge; FPD appointed for today only; Court in New York to determine eligibility of Deft for court appointed counsel; Waiver of Identity Hearing; Deft understands rights & waiver; Deft signs waiver; Court accepts waiver; Deft released on $50,000.00 unsecured bond and conditions; Govt addresses the Court concerning conditions; Court addresses parties; Deft ordered to report to the Eastern District of New York on 9/25/2019; Deft informed of penalties if violates conditions; Deft understands conditions; Deft released(Court Reporter FTR in Courtroom A at 2:31 pm.)(Noel, Jeannine) (Entered: 09/18/2019) |
| 09/18/2019 | | | TEXT ORDER appointing the Federal Public Defender for today's hearing only as to Michael Hlady. So Ordered by Magistrate Judge Lincoln D. Almond on 9/18/2019.(Noel, Jeannine) (Entered: 09/18/2019) |
| 09/18/2019 | 2 | 18 | WAIVER of Rule 5(c)(3) Hearing by Michael Hlady accepted by MJ Almond (Noel, Jeannine) (Entered: 09/18/2019) |
| 09/18/2019 | 3 | 19 | Appearance Bond Entered as to Michael Hlady in amount of $50,000.00 UNSECURED. So Ordered by Magistrate Judge Lincoln D. Almond on 9/18/2019.(Noel, Jeannine) (Entered: 09/18/2019) |
| 09/18/2019 | 4 | 21 | ORDER Setting Conditions of Release as to Michael Hlady (1) $50,000.00 UNSECURED. The defendant must appear at: U.S. District Court, Theodore Roosevelt U.S. Courthouse, 225 Cadman Plaza East, Brooklyn, NY 11201−1818 to Pretrial Services on the 2nd Floor on 9/25/2019 by 2:00 p.m. So Ordered by Magistrate Judge Lincoln D. Almond on 9/18/2019.(Noel, Jeannine) (Entered: 09/18/2019) |

*1:19MJ74LDA*

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Michael Hlady, also known as, "Michael Peters" | )    Case No.   19-M-830 |
| | ) |
| | ) |
| | ) |
| ———————————————————— | ) |
| *Defendant* | |

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*    Michael Hlady, a/k/a "Michael Peters" ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☑ Complaint
☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:

Hobbs Act Extortion Conspiracy, 18 U.S.C. 1951(a)

Date:    09/17/2019

                                         *Issuing officer's signature*

City and state:    Brooklyn, New York             Hon. Ramon E. Reyes, Jr. U.S. Magistrate Judge

                                                *Printed name and title*

| **Return** |
|---|
|     This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ <br> at *(city and state)* _____ . <br><br> Date: _____                                        _____ <br>                                                 *Arresting officer's signature* <br><br>                                                 _____ <br>                                                   *Printed name and title* |

SEALED

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: 1:19-mj-00830-RER All Defendants
## *SEALED*
### *Internal Use Only*

Case title: USA v. SEALED                    Date Filed: 09/17/2019

---

Assigned to: Magistrate Judge Ramon E. Reyes, Jr

**Defendant (1)**

**Steven Nerayoff**

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Opening)**

None

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| 18:1951.F | |

---

Assigned to: Magistrate Judge Ramon E. Reyes, Jr

**Defendant (2)**

**Michael Hlady**
*also known as*
Michael Peters

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Opening)**

None

**Terminated Counts**          **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**          **Disposition**

18:1951.F

---

**Plaintiff**

**USA**                represented by  **Andrey Spektor**
U.S. Attorney's Office, EDNY
271−A Cadman Plaza East
Brooklyn, NY 11201
718−254−6475
Fax: 718−254−6605
Email: andrey.spektor@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 09/17/2019 | 1 | | SEALED COMPLAINT as to Steven Nerayoff (1), Michael Hlady (2). (Attachments: # 1 Sealing Cover Sheet) (Chin, Felix) (Entered: 09/17/2019) |

AES:MEB/AS
F. #2018R00035

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - against -

STEVEN NERAYOFF and
MICHAEL HLADY,
      also known as "Michael Peters,"

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR ARREST WARRANTS

(18 U.S.C. § 1951(a))

19-M-830

EASTERN DISTRICT OF NEW YORK, SS:

      JORDAN R. ANDERSON, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

      Upon information and belief, in or about and between June 2017 and November 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants STEVEN NERAYOFF and MICHAEL HLADY, also known as "Michael Peters," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: virtual currency of a business, from individuals with their consent, which consent was to be induced by wrongful use of actual and threatened force, violence and fear, including fear of economic loss.

      (Title 18, United States Code, Section 1951(a))

2

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI") and am one of the law enforcement agents with primary responsibility for the investigation of this case. I have been a Special Agent with the FBI since 2016. Prior to joining the FBI, I earned a bachelor's degree in accounting, a master's degree in professional accounting and a license as a certified public accountant in Louisiana and Texas. I also worked as a financial statement auditor for a global accounting firm based in the United States. I am currently assigned to a squad within the FBI responsible for investigating complex financial crimes, including crimes involving wire fraud, bank fraud, securities fraud, money laundering and other white collar crimes. As a part of my work at the FBI, I have received training regarding these types of fraud and other white collar crimes.

2.    I have personally participated in the investigation of the offenses discussed below. I am familiar with the facts and circumstances of this investigation from (a) my personal participation in the investigation, (b) reports made to me by other law enforcement authorities, (c) interviews with various individuals, (d) my review of publicly-available information, and (e) my review of documents, including agreements, communications and subpoenaed records, among other sources of evidence.

---

[1]    Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware. In addition, where the contents of documents, or the actions, statements and conversations of others are reported herein, they are reported in sum and substance and in part, except where otherwise indicated.

3

I.    The Defendants and Relevant Individuals and Entities

3.    The defendant STEVEN NERAYOFF was a resident of Great Neck, New

York.  NERAYOFF was an attorney and the founder and Chief Executive Officer ("CEO") of

Alchemist, LCC ("Alchemist"), a company that purported to be a leading consultancy,

accelerator and investment firm for high-potential blockchain companies.  NERAYOFF also

controlled an entity called Maple Ventures LLC ("MV"), and an entity bearing the initials of his

name, SDN LTD ("SDN").

4.    The defendant MICHAEL HLADY, also known as, "Michael Peters," was

a resident of Hicksville, New York.  In or about and between the end of 2017 and November

2018, both dates being approximate and inclusive, HLADY was hired by the defendant STEVEN

NERAYOFF to be a consultant to Alchemist, and to perform functions similar to a Chief

Operations Officer.  HLADY used the alias "Michael Peters."  At various times, he also falsely

claimed to be a former member of the United States military and a former government agent who

had worked for the National Security Agency, the Federal Bureau of Investigation and the

Central Intelligence Agency.

5.    "Company 1," the identity of which is known to me, is headquartered in

Seattle, Washington.  Company 1 is a mobile-based business that specializes in generating user

traffic to clients' products by issuing rewards in the form of cryptocurrency tokens.

II.    Relevant Terms and Definitions

4.    Based on my training and experience and information I have learned

during this investigation, I am familiar with the following terms:

5.    An "Initial Coin Offering" ("ICO") or "crowdsale" was a fundraising

event during which an entity offered participants a unique "coin" or "token" in exchange for

4

consideration. The tokens or coins were generally issued on a "blockchain" or a cryptographically secured ledger. The tokens or coins were often paid for in "virtual currency." ICOs were typically announced and promoted through the internet and email. Issuers usually released a "whitepaper" describing the project and the terms of the ICO. To participate in the ICO, investors were generally required to transfer funds to the issuer. After the completion of the ICO, the issuer distributed its unique coin or token to the participants. The coins or tokens might entitle holders to certain rights related to a venture underlying the ICO, such as rights to profits, shares of assets, rights to use certain services provided by the issuer and/or voting rights. These coins or tokens might also be listed on online platforms, often called virtual currency exchanges, and might be tradable for virtual currencies.

6.     "Pre-seed funding" was a fundraising event offering investors an early investment opportunity, which could include equity or debt investments into a new company.

7.     A "presale" or "Pre-ICO" was a fundraising event that occurred prior to an ICO. It typically targeted specific investors.

8.     "Virtual currency," also known as "a digital asset" and "cryptocurrency," was a digital representation of value that could be digitally traded and functioned as (a) a medium of exchange; and/or (b) a unit of account; and/or (c) a store of value, but did not have legal tender status. In other words, virtual currency was not issued by any jurisdiction and functioned only by agreement within the community of users of that particular currency. Examples of virtual currency were Bitcoin and Ether ("ETH").

9.     A "blockchain" was a type of distributed ledger, or peer-to-peer database spread across a network, that recorded all transactions in the network in theoretically unchangeable, digitally-recorded data packages called blocks. Each block contained a batch of

Case 1:20-cv-00006-MKB Document 101 Filed 09/19/19 Page 10 of 23 PageID #826
Case 1:19-mj-00830-RER *SEALED* Document 1 Filed 09/17/19 Page 5 of 12 PageID 18

5

records of transactions, including a timestamp and reference to the previous block, linking the blocks together in a chain. The system relied on cryptographic techniques for secure recording of transactions.

10. Ether was generated on the Ethereum blockchain, which was an open-source, public, blockchain-based distributed computing platform and operating system featuring smart contract functionality. Ether could be transferred between accounts and "Ethereum Wallets."

11. An Ethereum Wallet was a gateway to decentralized applications on the Ethereum blockchain, which permitted the holder of an Ethereum Wallet to hold and secure Ether and other virtual currencies built on Ethereum, as well as to write, deploy and use smart contracts. I understand that each Ethereum Wallet had its own unique identifier known as an "address."

12. A "smart contract" was a computer program designed to execute the terms of a contract when certain triggering conditions were met. Blockchains or distributed ledgers could record smart contracts.

III. The Extortion Scheme

13. On or about July 22, 2017, John Doe and Jane Doe, respectively CEO and Chief Operating Officer of Company 1, signed an agreement (the "July 2017 Agreement") with MV, the defendant STEVEN NERAYOFF's company. The July 2017 Agreement, among other things, required MV to do the following: (1) revise Company 1's whitepaper; (2) add advisors and strategic partnerships for Company 1 to ensure a "successful crowdsale"; (3) source and curate pre-seed funding from "strategic partners in the blockchain community"; (4) assist Company 1 with its sale method and network connection; and (5) complete Company 1's

6

"crowdsale in a successful/compliant manner." In exchange for MV's services, Company 1 was required to provide MV with 22.5% of all the cryptocurrency tokens sold by Company 1 and 22.5% of all the funds raised by Company 1, including in the form of cryptocurrency and cash, "regardless of the method and manner in which [the funds] are raised."

14. After MV and Company 1 signed the agreement, the defendants STEVEN NERAYOFF and MICHAEL HLADY took various actions to threaten John Doe, Jane Doe and Company 1 in order to extract additional compensation without promising or rendering any additional services, as detailed below.

A. The First Extortion: 30,000 ETH

15. Company 1's crowdsale was scheduled to begin on November 7, 2017.

16. The defendant STEVEN NERAYOFF told John Doe and Jane Doe that MV raised a total of approximately 55,677 ETH during the pre-sale period on behalf of Company 1. Pursuant to the July 2017 Agreement, MV was entitled to 22.5% of the 55,677 ETH raised, or approximately 12,527 ETH.

17. On or about and between October 30, 2017 and November 6, 2017, the defendant STEVEN NERAYOFF and a co-conspirator ("Co-Conspirator 1") contacted John Doe and Jane Doe and demanded that Company 1 agree to let MV keep 30,000 ETH (worth approximately $8.75 million on November 7, 2017) that it had been holding from the pre-sales. NERAYOFF stated, in sum and substance, that if John Doe and Jane Doe did not agree, then NERAYOFF would, among other things, sabotage the crowdsale, generate negative press for Company 1 and use his contacts with influential people to "destroy" Company 1. NERAYOFF told John Doe, in sum and substance, that John Doe had a choice: NERAYOFF could keep all

USCA2 8

11

Case 1:20-cr-00008-MKB Document 10 Filed 09/18/19 Page 12 of 23 PageID #:188
Case 1:19-mj-00830-RER *SEALED* Document 1 Filed 09/17/19 Page 7 of 12 PageID 20

7

the pre-sale funds raised and destroy Company 1, or Company 1 could sign two agreements that he sent.

 18. On or about November 6, 2017, the defendant STEVEN NERAYOFF sent an email to John Doe and Jane Doe, with the subject line, "Please sign ASAP," and attached two agreements that sought to provide additional compensation to NERAYOFF. On or about November 7, 2017, Jane Doe and NERAYOFF executed the two agreements.

 19. The first agreement, titled "Services Payment Agreement," stated that, "Company 1 wishes to compensate Nerayoff if the Crowdsale is successful." The agreement provided, in sum and substance, that if Company 1 raised 60,000 ETH during the pre-sale and crowdsale periods, then the defendant STEVEN NERAYOFF would be entitled to 1.35 billion of Company 1's tokens and 30,000 ETH (or equivalent cryptocurrency). The Services Payment Agreement further provided that if Company 1 raised 120,000 ETH, then NERAYOFF would be entitled to an additional 6,000 ETH. Under the agreement, NERAYOFF was also entitled, with no pre-conditions, to 900 million Company 1 tokens two years after the token sale. A provision in the Services Payment Agreement also stated that it was a material breach for the agreement to be disclosed to any third party.

 20. The second agreement, titled the "Nominee Agreement," was also executed on or about November 7, 2017. It provided that Company 1 "Directs Nerayoff to transfer [30,000 ETH or the equivalent in cryptocurrencies] to the persons listed on Schedule A hereof upon completion of the Crowdsale." The only individual or entity listed on Schedule A was SDN, an entity controlled by the defendant STEVEN NERAYOFF. The Nominee Agreement further provided that its terms "shall remain confidential."

8

21. Between approximately November 7, 2017 and approximately December 8, 2017, Company 1's crowdsale raised approximately another 20,000 ETH for Company 1. As a result, a total of approximately 75,677 ETH was raised for Company 1 during the pre-sale and crowdsale periods. Based on the original July 2017 Agreement, the defendant STEVEN NERAYOFF would have been entitled to approximately 17,027 ETH as payment for MV's services during these periods. However, pursuant to the Services Payment Agreement, NERAYOFF kept 30,000 ETH. The additional approximately 13,000 ETH that NERAYOFF kept as a result of the Services Payment Agreement was valued at approximately $3.78 million on November 7, 2017.

22. At the conclusion of Company 1's crowdsale, 1.3 billion of Company 1's tokens still remained unsold. On approximately December 1, 2017, Company 1 incentivized users of Company 1 tokens and participants in the crowdsale to retain the Company 1 tokens by promising to distribute any unsold tokens to them. Despite not being eligible to receive these tokens, between approximately December 2017 and May 2018, the defendant STEVEN NERAYOFF demanded 1 billion of the unsold tokens from Company 1, before revising his demand to 350 million tokens.

B.     The Second Extortion: the 10,000 ETH "Loan"

23. In approximately March 2018, the defendant STEVEN NERAYOFF demanded that Company 1 give him a purported loan for 10,000 ETH (valued at approximately $4.45 million on March 28, 2018). Around that same time, NERAYOFF introduced the defendant MICHAEL HLADY to John Doe and Jane Doe. NERAYOFF stated, in sum and substance, that HLADY was his "operations guy," whom they should view as the president of Alchemist. NERAYOFF also told John Doe and Jane Doe that HLADY was a former

Case 1:20-cr-00006-MKB Document 10 Filed 09/18/19 Page 14 of 23 PageID #:130
Case 1:19-mj-00830-RER *SEALED* Document 1 Filed 09/17/19 Page 9 of 12 PageID 22

9

government agent who could carry firearms through airports. On separate occasions, HLADY told Jane Doe, in sum and substance, and among other things, that he had been shot at and had killed people, that he had "taken down" a head of state, and that he had been a part of the Irish Republican Army, the National Security Agency, the Central Intelligence Agency and the Federal Bureau of Investigation. The email address from which HLADY would email John Doe and Jane Doe had an Alchemist domain.

24. Between March 20, 2018 and March 23, 2018, both dates being approximate and inclusive, Jane Doe visited the defendants STEVEN NERAYOFF and MICHAEL HLADY at NERAYOFF's home in Great Neck, New York. Due to a snowstorm, Jane Doe was unable depart New York on a flight as scheduled. Instead, Jane Doe stayed at NERAYOFF's house on the evening of March 21, 2018, and through March 22, 2018.

25. In the middle of the night, on approximately March 22, 2018, the defendant MICHAEL HLADY walked into the room where Jane Doe was sleeping by herself. HLADY turned on the lights, pulled a up a chair to the bed where Jane Doe had been sleeping and told Jane Doe, in sum and substance, that if Company 1 did not agree to his demands, which included, among other things, a demand for $10,000,000 and a large amount of Company 1 tokens, then "we will crush you," by, among other things, driving down the price of Company 1's tokens. At some point later that night, the defendant STEVEN NERAYOFF also entered the room. He told Jane Doe, in sum and substance, that he would destroy her and Company 1, but that he did not want to, and asked Jane Doe if she wanted to, in sum and substance, thrive or be destroyed. Shortly thereafter, NERAYOFF and HLADY demanded that Company 1 provide a purported 10,000 ETH loan to NERAYOFF.

Case 1:20-cr-00008-MKB Document 10 Filed 09/18/19 Page 15 of 23 PageID #:31
Case 1:19-mj-00830-RER *SEALED* Document 1 Filed 09/17/19 Page 10 of 12 PageID 23

10

26.     On other occasions, the defendants STEVEN NERAYOFF and

MICHAEL HLADY made additional threats to Jane Doe and John Doe.  For example, HLADY

told Jane Doe he was aware of her work-related issues at a different company, and knew where

her child went to school.  NERAYOFF and HLADY also threatened to expose Company 1 to

potential litigation.

27.     Between approximately March 27, 2018 and March 28, 2018, as the

defendant MICHAEL HLADY was moving through John F. Kennedy International Airport to fly

to Cancun, Mexico, HLADY sent a series of "iMessages" to Jane Doe primarily regarding the

loan.  One of the messages that HLADY sent to Jane Doe said the following, in sum and

substance:

> [Jane Doe] fix this by the time I land or I promise I will destroy
> your community. (1) we will go public with Stevens holding. (2)
> we will sell and get everyone we know to sell. (3) we will sue you.
> (4) a story will be written about [Company 1]. You are stalling for
> stalling's sake. I will be landing in 4hrs I expect you and [John
> Doe] on the phone. Also I want the "manual" you wrote today!!

28.     As a direct result of these threats, on or about and between March 28,

2018 and April 1, 2018, John Doe instructed a Company 1 employee to transfer 10,000 ETH to

the defendant STEVEN NERAYOFF as a loan.  Despite repeated requests in approximately

May 2018 through August 2018 to NERAYOFF and the defendant STEVEN HLADY,

NERAYOFF refused to pay back the 10,000 ETH loan.

C.     Other Threats

29.     The defendant STEVEN NERAYOFF also made clear to Jane Doe that he

wanted to acquire Company 1.  On or about May 10, 2018, NERAYOFF wrote an email to

HLADY and Co-Conspirator 1, which stated in part:

> Something has to be done to explain when they [i.e., Jane Doe and

John Doe] make a deal they stick to it regardless of the consequences. And then when we renegotiate they stick to that deal. Enough is enough. We are acquiring them and going to make them fucking rich as hell and she [i.e., Jane Doe] will pay off everything and get what she would never have without us so tell her to chill out. We will blow them out as a protocol and they will be part of Alchemist.

30. On approximately May 15, 2018, John Doe and Jane Doe attended a meeting in a hotel room in New York City, with the defendants STEVEN NERAYOFF and MICHAEL HLADY, along with Co-Conspirator 1 and other individuals working for NERAYOFF. During the meeting: (1) NERAYOFF confirmed that he knew of HLADY's threat to "destroy" Company 1; and (2) one of NERAYOFF's employees stated that they were running an "intervention" with NERAYOFF, and that with exception of NERAYOFF, they were not "ganging up" on Jane Doe and John Doe.

III. Conclusion

WHEREFORE, your deponent respectfully requests that arrest warrants be issued for the defendants STEVEN NERAYOFF and MICHAEL HLADY so that they may be dealt with according to law.

IT IS FURTHER REQUESTED that, because public filing of this document at this time could result in a risk of flight by the defendants, as well as jeopardize the government's

12

investigation, all papers submitted in support of this application, including the complaint and

arrest warrant, be sealed until further order of the Court.

JORDAN R. ANDERSON
Special Agent, Federal Bureau of Investigation

Sworn to before me this
17th day of September, 2019
by telephone

THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

Case 1:19-mj-00074-LDA Document 2 Filed 09/18/19 Page 1 of 1 PageID #: 6

AO 466A (Rev. 07/16) Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
### for the
### District of Rhode Island

| | |
|---|---|
| United States of America | ) |
| v. | ) Case No. 1:19MJ74LDA |
| MICHAEL HLADY | ) |
| | ) Charging District's Case No. 1:19MJ830RER |
| *Defendant* | ) |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)*

EASTERN DISTRICT OF NEW YORK (BROOKLYN)                                    .

I have been informed of the charges and of my rights to:

(1)     retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)     an identity hearing to determine whether I am the person named in the charges;

(3)     production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)     a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5)     a hearing on any motion by the government for detention;

(6)     request a transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

❒     an identity hearing and production of the warrant.

❒     a preliminary hearing.

❒     a detention hearing.

☒     an identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled in this district. I request that any preliminary or detention hearing be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:     9 - 18 - 19                         _____
                                                           *Defendant's signature*

                                             _____
                                                     *Signature of defendant's attorney*

                                             KEVIN J. FITZGERALD
                                             *Printed name of defendant's attorney*

18

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT
for the

District of Rhode Island

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  1:19MJ74LDA |
| MICHAEL HLADY | ) | |
| | ) | |
| *Defendant* | ) | |

## APPEARANCE BOND

### Defendant's Agreement

I, _____ MICHAEL HLADY _____ *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

( ✕ )   to appear for court proceedings;
( ✕ )   if convicted, to surrender to serve a sentence that the court may impose; or
( ✕ )   to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

(     ) (1)  This is a personal recognizance bond.

( ✕ ) (2)  This is an unsecured bond of $  50,000.00 _____  .

(     ) (3)  This is a secured bond of $ _____ , secured by:

(     )  (a) $ _____ , in cash deposited with the court.

(     )  (b) the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it — such as a lien, mortgage, or loan — and attach proof of ownership and value)*:


If this bond is secured by real property, documents to protect the secured interest may be filed of record.

(     )  (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:




### Forfeiture or Release of the Bond

*Forfeiture of the Bond.* This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

19

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

(1)     all owners of the property securing this appearance bond are included on the bond;

(2)     the property is not subject to claims, except as described above; and

(3)     I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date:     09/18/2019

X _____

*Defendant's signature*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

_____
*Surety/property owner – printed name*

_____
*Surety/property owner – signature and date*

CLERK OF COURT

Date:     09/18/2019

_____
*Signature of Clerk or Deputy Clerk*

Approved.

Date:     09/18/2019

_____
*Judge's signature*

AO 199A (Rev. 12/11) Order Setting Conditions of Release                    Page 1 of ___3___ Pages

# UNITED STATES DISTRICT COURT
for the
District of Rhode Island

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.  1:19MJ74LDA |
| MICHAEL HLADY | ) | |
| | ) | |
| *Defendant* | ) | |

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1) The defendant must not violate federal, state, or local law while on release.

(2) The defendant must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.

(3) The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4) The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at:  U.S. District Court, Theodore Roosevelt U.S. Courthouse, 225 Cadman
                                                                        *Place*

Plaza East, Brooklyn, NY 11201-1818 to Pretrial Services on the 2nd Floor

on _____9/25/2019 2:00 pm_____
                                        *Date and Time*

If blank, defendant will be notified of next appearance.

(5) The defendant must sign an Appearance Bond, if ordered.

21

AO 199B (Rev. 12/11) Additional Conditions of Release                                                    Page __2__ of __3__ Pages

## ADDITIONAL CONDITIONS OF RELEASE

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

( ) (6) The defendant is placed in the custody of:
Person or organization _____
Address *(only if above is an organization)* _____
City and state _____      Tel. No. _____
who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: _____      _____
                        *Custodian*                                  *Date*

(×) (7) The defendant must:
( × ) (a) submit to supervision by and report for supervision to the   Pretrial Services                       ,
          telephone number   (401) 752-7217 , no later than _____ .
( ) (b) continue or actively seek employment.
( ) (c) continue or start an education program.
( × ) (d) surrender any passport to:   Clerk's Office, U.S. District Court
( × ) (e) not obtain a passport or other international travel document.
( × ) (f) abide by the following restrictions on personal association, residence, or travel:   Travel is restricted to District of RI;  Deft
          may travel between RI and EDNY for court purposes; Deft may bring wife to/from work in MA
( × ) (g) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution,
          including: _____
( × ) (h) get medical or psychiatric treatment:   mental health treatment
( ) (i) return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling,
          or the following purposes: _____
( ) (j) maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers
          necessary.
( × ) (k) not possess a firearm, destructive device, or other weapon.
( ) (l) not use alcohol ( ) at all ( ) excessively.
( ) (m) not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed
          medical practitioner.
( ) (n) submit to testing for a prohibited substance if required by the pretrial services office or supervising officer.  Testing may be used with random
          frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited
          substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited
          substance screening or testing.
( ) (o) participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or
          supervising officer.
( ) (p) participate in one of the following location restriction programs and comply with its requirements as directed.
          ( ) (i) **Curfew.** You are restricted to your residence every day ( ) from _____ to _____ , or ( ) as
                  directed by the pretrial services office or supervising officer; or
          ( ) (ii) **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical,
                  substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities
                  approved in advance by the pretrial services office or supervising officer; or
          ( ) (iii) **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and
                  court appearances or other activities specifically approved by the court.
( ) (q) submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program
          requirements and instructions provided.
          ( ) You must pay all or part of the cost of the program based on your ability to pay as determined by the pretrial services office or
                  supervising officer.
( × ) (r) report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including
          arrests, questioning, or traffic stops.
( ) (s) _____

AO 199C  (Rev. 09/08) Advice of Penalties                                    Page ___3___ of ___3___ Pages

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
*Defendant's Signature*

_____
*City and State*

### Directions to the United States Marshal

( ✓ ) The defendant is ORDERED released after processing.

(   ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: _____9/18/2019_____                    _____
                                              *Judicial Officer's Signature*

                                        LINCOLN D. ALMOND, U.S. MAGISTRATE JUDGE
                                                *Printed name and title*

DISTRIBUTION:   COURT    DEFENDANT    PRETRIAL SERVICE    U.S. ATTORNEY    U.S. MARSHAL

23