**Michael A. Scotto**
Attorney-at-Law
**1225 Franklin Ave, Suite 325**
**Garden City, NY 11530**
mascottoesq@gmail.com
*mobile: 516-506-2302*
*fax: 516-706-7312*

April 12, 2023

The Honorable Margo K. Brodie
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

*By ECF*

Re: United States v. Steven Nerayoff--Crim. No. 20-008 (MKB)

Dear Judge Brodie:

I submit this letter in reply to the government's April 10, 2023 response (ECF 120), and in further support of Mr. Nerayoff's request (ECF 117) for an order vacating the October 19, 2019 protective order (ECF Document 21).

***The Government's Assertion of "Deanonymization" is Without Merit as the Government Already Unmasked the Alleged "Victims"***

Although the government claims that it is Mr. Nerayoff's intention to "deanonymize" the alleged victims, the identities of the alleged victims were never secret as the government provided enough detail in its press release that published media accounts were able to identify Company 1, Jane Doe and John Doe by their actual names the very next day![1] This happened a full month before the government obtained the October 19, 2019 protective order.[2] The government does not dispute

---

[1] *See* https://www.seattletimes.com/business/technology/consultant-extorted-8-million-from-seattle-cryptocurrency-startup-feds-charge and https://www.geekwire.com/2019/cryptocurrency-extortion-scheme-targeted-seattle-startup-(actual name of Company1)-report-says

[2] While the government is correct in noting that Mr. Nerayoff consented to the protective order at the time it was issued, what other choice did he have but to consent, as it was a condition to his receiving material crucial to his defense of the false charges? Of course, the fact that Mr. Nerayoff "consented" to the protective order as a condition

1

this fact.[3] Company 1's identity was surely no secret, as on June 8, 2022 the government filed a letter in ECF (Document 87) for all the world to see which described the 41,891 pages of Company 1 documents provided to Mr. Nerayoff identified them as "(Actual Name of Company 1)__000001 through (Actual Name of Company 1)_041891."

Nor can the government dispute that John Doe, in responding to an inquiry from the Seattle Times, did not deny that he was John Doe, or that Company 1 was Mr. Nerayoff's alleged victim— rather he replied that "he had been asked not to comment on the investigation." GeekWire similarly reported "(Actual last name of John Doe) told GeekWire that he was "asked not to comment on the DOJ investigation."[4]

Rhetoric aside, Mr. Nerayoff's application to vacate the protective order isn't about unmasking these individuals so that their misdeeds can be held up to the world, as indeed it is abundantly clear that the government unmasked them by providing extensive information that enabled the media to easily identify them by name.[5]  Rather, Mr. Nerayoff's application is about lawfully and properly using the documents that the alleged victims and others provided to the government in this matter in litigation he intends to file to clear his name and reputation and to obtain recompense for the damages he has suffered as a result of Company 1's and others' misconduct that are directly related to this wrongheaded and malicious prosecution.

Finally, the government's "deanonymize" argument fails as Mr. Nerayoff does not need the protected material to "unmask" the (government unmasked), alleged victims, as he has video and audio recordings and other material in his possession that he could disseminate publicly if he so chose.  This application seeks to use the protected material in proper litigation and nothing else.

---

to receiving this material does not serve as a waiver to seek it vacated based on a change of circumstance, as well as the fact that it apparently was improvidently granted *ab initio*. See, *SEC v. TheStreet.com*, 273 F.3d 222, 229 (2nd Cir. 2001) (even where reasonable reliance by a party, a protective order may be vacated upon showing that it was improvidently granted, or some extraordinary circumstance of compelling need).

[3] Although the government claims to want to maintain the anonymity of Company 1, Jane Doe, and John Doe so that their "deanonymizing" won't have a chilling effect on other presumably actual crime victims, those motives don't seem apparent from their post protected order continued disclosure of specific information that would lead anyone to their identities, as the government's April 5, 2021 press release announcing Michael Hlady's guilty plea contained detailed information regarding Company 1. *See* https://www.justice.gov/usao-edny/pr/individual-pleads-guilty-brooklyn-federal-court-extorting-cryptocurrency-startup (Victim Company was "a startup mobile-based business that issued cryptocurrency tokens such as Ether as loyalty rewards for generating user traffic to its clients' products.  To raise capital, the Company planned to conduct an Initial Coin Offering ("ICO") in November 2017.")

[4] *See*  https://www.seattletimes.com/business/technology/consultant-extorted-8-million-from-seattle-cryptocurrency-startup-feds-charge  and  https://www.geekwire.com/2019/cryptocurrency-extortion-scheme-targeted-seattle-startup-(actual name of Company1)-report-says

[5] Indeed, the government's press release and "tweet" announcing Mr. Nerayoff's arrest remain online, notwithstanding the fact that both Mr. Nerayoff and the government have moved to dismiss the indictment and the government well knows that John Doe, Jane Doe, and Company 1's account of their dealings with Mr. Nerayoff which formed the basis for the indictment are absolute lies.

Not vacating the order will not serve to keep the non-victims' identities secret, it will only serve to conceal the misdeeds that have been visited on Mr. Nerayoff in connection with this baseless prosecution.

### *Mr. Nerayoff Seeks to Use These Documents for A Proper Purpose*

That Mr. Nerayoff seeks to retain these records for use in appropriate litigation is best evidenced by the fact that Mr. Nerayoff could have identified the alleged "victims" by name in his motion to dismiss and filed copies of the video and audio recordings, which were made by him and not subject to the protective order, publicly, but did not.[6] While Mr. Nerayoff did provide those video recordings and unredacted documents directly with the Court, they were submitted with a request that they remain under seal. In doing so, Mr. Nerayoff abided by both the letter and the spirit of the protective order.[7]

### *The Privacy Interests of Crime Victims is Not at Issue*

It is laudable that after disclosing enough information that allowed multiple reporters to identify the alleged victims, the government now seeks to protect the privacy interest of the alleged victims. Mr. Nerayoff, as a crime victim himself, certainly appreciates the government's concerns regarding the potential chilling effects that disclosure might have[8]

The government's claim that the Crime Victims Act, 18 U.S.C. § 3771, requires the protective order to remain in place however is flawed, as John Doe, Jane Doe and Company 1 are not victims under the Act as they are in fact not crime victims. It is beyond dispute that "…as a prerequisite to obtaining the Act's protections…[it] must [be] show[n] that they are "crime victims" within the meaning of the statute. *Farber v. County of Suffolk*, 2010 U.S. Dist. LEXIS 104977 (EDNY 2010). 18 U.S.C. § 3771 provides that "the term 'crime victim' means a person directly and proximately harmed as a result of the commission of a federal offense or an offense in the District of Columbia." Notwithstanding their being designated victims in the complaint, indictment and

---

[6] Rather than identify each by name the pseudonym Jane Doe appears 252 times, the pseudonym John Doe appears 147 times, and the pseudonym Company 1 appears 256 times. In addition, over 100 references to the alleged victims' true names were redacted when they appeared in exhibits filed in support of the motion. Ironically, Mr. Nerayoff scrupulously honored both the letter and the spirit of the protective order, yet the government, who unmasked Jane Doe, John Doe, and Company 1, are questioning his motives in seeking to vacate the protective order at the conclusion of the case.

[7] In addition to the Skype Business Meeting video recordings filed with the court in support of our motion, Mr. Nerayoff also made recordings of the November 19, 2018 telephone call with Jane Doe (which was also recorded by the FBI and provided in discovery, and submitted as Exhibits 46 (recording) and 47 (transcript) in support of the February 13, 2023 motion to dismiss) and his February 23, 2018 telephone call with FBI Special Agent Jordan Anderson referenced in Mr. Nerayoff's motion to dismiss.

[8] The fact that the government turned a blind eye to Mr. Nerayoff's victimization at the hands of his alleged co-defendant Michael Hlady or the fraud executed upon Mr. Nerayoff by Company 1, surely does not detract from Mr. Nerayoff's victimization.

3

government press releases, Jane Doe, John Doe, and Company 1 were never victims, rather they victimized Mr. Nerayoff.

Similarly, the second company described in my March 28, 2023 letter motion is also not a victim, notwithstanding the fact that the government provided Mr. Nerayoff with 52,815 pages of that company's records in an attempt to force him to plead guilty to this indictment.[9]

While the government is concerned with the "chilling effect," that a vacatur might have on other (presumably actual), victims of criminal conduct, we believe that in this case, the order sought is limited to the specific factual record before the Court and that any decision vacating the protective order will not lead to the collateral consequences that the government fears or have any precedential effect absent these specific facts presented here: that a protective order should be vacated in a case where anonymous victims conspired to wrongfully and falsely accuse an individual and engaged in a conspiracy to maliciously prosecute him.

### *The Materials Do Not Reveal Investigative Techniques, Identify Undercover Agents, Jeopardize a Pending Investigation and There is no Danger to Individuals*

The protected materials do not reveal law enforcement investigative techniques (*United States v. Bin Laden*, 2001 U.S. Dist. LEXIS 614 (SDNY Jan. 26, 2001)); or the identity of government undercover agents (*United States v. Stevens*, 2022 U.S. Dist. LEXIS 36094 (SDNY Feb. 25, 2022)); they don't jeopardize ongoing investigations (*United States v. Smith*, 985 F. Supp. 2d 506, 523-524 (SDNY 2013)); and there is no credible showing of danger to individuals (*United States v. Urena,* 989 F.Supp.2d 253, 262 (SDNY 2013)). Allowing the protective order to remain in place at the conclusion of this case will merely make it harder for Mr. Nerayoff to seek the justice that the government has denied him for the last three and a half years.

### *The Risk of Reputational Harm to Third Parties is Nonexistent*

The risk to third parties of reputational harm that the government alludes to is non-existent. It appears that the third party that the government refers to was a business associate of Mr. Nerayoff who attended the May 18, 2018 hotel meeting. The government quoted a comment that this individual made in the complaint[10] to support the maliciously false accusation that Mr. Nerayoff

---

[9] As noted in my March 28, 2023 letter motion (ECF 117), after learning of Mr. Nerayoff's indictment, this second Company falsely accused Mr. Nerayoff of engaging in similar conduct with them so that they could breach their contract with Mr. Nerayoff, secure in the fact that Mr. Nerayoff could not seek to sue them for that breach, as the government had threatened to either supersede Mr. Nerayoff's indictment to bring additional charges based on these allegations or introduce the material provided by that company at trial by way of a FRE 403(b)(2) motion so he would be facing a trial with two (false) victims. Indeed, the government provided Mr. Nerayoff with 52,815 pages of that company's records as part of the June 16, 2021 discovery (see ECF 87, June 16, 2021 production: AH0000001 through AH00052815).

[10] See Complaint at ¶30 "One of NERAYOFF's employees stated that they were running an "intervention" with NERAYOFF, and that with exception of NERAYOFF, they were not "ganging up" on Jane Doe and John Doe." As noted in Mr. Nerayoff's Motion to Dismiss, this statement was taken out of context, as the speaker was attempting to inject levity into the discussion. That the government is now basing its opposition to Mr. Nerayoff's application on a

was engaged in criminal activity and not lawful commerce. Mr. Nerayoff attended the meeting, he knows all the other individuals present at the meeting and knows what each participant said. What privacy interest or risk of undue and irreparable reputational harm is there? There is none, particularly as the third party that the government appears to be concerned about was not covered by the protective order and not even named in the transcript of the recorded meeting.[11]

### *Mr. Nerayoff has a Compelling Need for These Documents*

While the government is correct that Mr. Nerayoff could obtain some of these documents through discovery in the three or more actions he intends to file, his request to be able to retain these documents assures that the documents are not lost or destroyed. The government's discovery that Mr. Nerayoff seeks to maintain is a snapshot of a period of time, long passed. Indeed, in attempting to obtain records in this case from Company 1 pursuant to a subpoena of this Court, Company 1 was unable to locate the sought after records given the passage of time—five years plus, and changes in Company 1 staff and legal representation. Moreover, despite Mr. Nerayoff investing tens of thousands of dollars in Company 1, and his investment being reflected in the documents produced by the government in discovery, Company 1 is falsely claiming that Mr. Nerayoff is not an investor.

It would be unfortunate indeed if Mr. Nerayoff was denied the opportunity to seek redress for the various injustices he suffered because of this false and malicious prosecution.

Moreover, while to be sure Mr. Nerayoff does have some copies of the documents he seeks from the government, as he was a party to certain emails or agreements, he does not have additional documents that establish peradventure that the government knew prior to the institution of charges that he was actually innocent:

> The documents obtained by the government from Company 1 were provided in pdf form. As noted in my February 13, 2023 declaration, those pdfs properties tab all reveal that were created by Company 1 on February 5, 2019—a full nine months prior to the government's obtaining an arrest warrant for Mr. Nerayoff and eleven months prior to the government's obtaining the indictment.
>
> Mr. Nerayoff also does not have his own copies of the following documents, that we submitted to the Court as exhibits in our March 21, 2023 reply:

---

statement that they took out of context to create the appearance of an extortion when there was none is quite frankly beyond belief.

[11] Of course, even assuming *arguendo,* there was reasonable reliance by a party in connection with the protective order, this Court may vacate the order where it was improvidently granted, or there exists some extraordinary circumstance of compelling need). *SEC v. TheStreet.com*, 273 F.3d 222, 229 (2nd Cir. 2001).

5

>(1) a June 20, 2018 email Jane Doe sent FBI Special Agent Andrew Cropcho which contained several documents relating to alleged threats by Mr. Nerayoff and Michael Peters (Exhibit 58: Company 1_011303).
>
>(2) emails between John Doe and other executives at Company 1 which revealed that Jane Doe had been fired by Company 1 for her attempt to "forcibly sell the company" to Mr. Nerayoff's company (Exhibit 59: Company 1_37496).
>
>(3) a November 9, 2018 Securities and Exchange Commission subpoena for records relating to Company 1's ICO on November 9, 2018 issued by SEC Enforcement Attorney Jon Daniels under the case name Fantasy Markets (Exhibit 60: Company 1_013902).
>
>(4) a September 10, 2017 email that Jane Doe drafted, the subject "[Jane Doe] WILL DELETE THIS AFTER THE CALL FYI," which appear to be her notes for the September 10, 2017 Skype Meeting with Mr. Nerayoff described in our February 13 motion (Exhibit 61: Company 1_018071).

As displayed in my March 21, 2023 Reply, these documents all support Mr. Nerayoff's innocence and the government's knowledge that he was innocent, which would be highly relevant to any *Bivens* action that Mr. Nerayoff intends to bring against current and former employees of the very office that is litigating this issue. I submit denying Mr. Nerayoff continued access to these documents appears less about protecting the alleged victims, protecting policy interests and innocent third parties, and more about self-preservation.

To keep these records from Mr. Nerayoff in order to prevent him from successfully prosecuting the causes of action he intends to bring would be an additional injustice. Further, we believe that allowing a protective order to stand in a case where a defendant, like Mr. Nerayoff, is innocent and has been falsely prosecuted will allow bad actors' misdeeds to be covered up and thus is abhorrent to public policy and the public's right to know.

Based on all these reasons, the Court should vacate the protective order and allow Mr. Nerayoff to retain and use these documents as the protective order was improvidently granted, here exists extraordinary circumstances and Mr. Nerayoff has established a compelling need for these documents, thus meeting the Second Circuit's test in *SEC v. TheStreet.com*, 273 F.3d 222, 229 (2nd Cir. 2001).

### *Motion to Amend the Indictment*

With regard to Mr. Nerayoff's motion to amend the Indictment to reflect the true names of the alleged victims, as noted by the government, their identities are already known based on the government's press release thus an amendment of the indictment is not necessary. Accordingly, we would withdraw our request to amend the indictment.

We would however ask that at the conclusion of the case, that the Court unseal the sealed exhibits submitted in support of Mr. Nerayoff's February 13 motion to dismiss and the motion papers and decision related to the subpoena this Court issued (ECF 100) in connection with former counsel's *ex parte* request, as the public has a "general right to inspect and copy public records and documents, including judicial records and documents;" *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).

Finally, although we've made this motion prior to the Court's determination of Mr. Nerayoff's February 13, 2023 motion, if the Court requires the prosecution to provide Mr. Nerayoff with any of the documents he sought in that motion or orders a hearing, where other documents are provided to him, Mr. Nerayoff requests that the Court allow him to retain any other documents that he is granted access to.

Respectfully submitted,

/s/Michael A. Scotto

cc: Counsel for the Government via ECF

7